**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JEFFREY THOMAS and ISHAYE** | : | **Civil No. 4:12-CV-692** |
| **THOMAS,** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **MARK SHUTIKA, and** | : | |
| **COMMONWEALTH OF** | : | |
| **PENNSYLVANIA,** | : | |
| | : | |
| **Defendants.** | : | |

**MEMORANDUM  OPINION**

I.     **Statement of Facts and of the Case**

This is a civil rights action brought by Jeffrey Thomas, and his wife, Ishaye

Thomas, against the Commonwealth of Pennsylvania, and an employee of the state

Department of Corrections, Mark Shutika.  (Doc. 1.)  According to the Thomases'

complaint, in January of 2011, Jeffrey Thomas was incarcerated at the State

Correctional Institution Rockview, when he was ordered by defendant Shutika to

operate a jackhammer as part of a work detail at this facility.  Thomas alleges that he

was untrained in the operation of this equipment and unequipped with safety shoes,

but was nonetheless coerced by the defendant to undertake this work assignment.

According to Thomas, due to his lack of training and safety equipment he suffered multiple fractures to his right foot as a result of the jackhammer jumping and crushing his foot. (Id.) Following this factual recital, Thomas' complaint brings four claims against the defendants: (1) a civil rights claims against defendant Shutika under Title 42, U.S. Code Section 1983 (Doc. 1, Count I.); (2) a state law negligence claim against defendant Shutika; (Doc. 1, Count II.); (3) a claim of *respondeat superior* liability against the Commonwealth of Pennsylvania (Doc. 1, Count III.); and (4) a claim on behalf of Ishaye Thomas, Jeffrey Thomas' spouse, for loss of consortium as a result of her husband's injuries. (Doc. 1, Count IV.)

This matter now comes before the Court on a motion for summary judgment filed by the defendants. (Doc. 36.) With respect to this motion the facts–both disputed and undisputed–can be simply stated.[1]

_____

[1]This statement of facts is taken from the parties' competing statements of fact, and the evidentiary materials submitted by the parties in support of their factual narratives, and reflects our identification of those factual matters which are material and are either disputed or undisputed. (Docs. 38 and 40.) We note that the defendants have moved to strike certain exhibits from the plaintiff's response to this motion for summary judgment. (Doc. 41.) The plaintiff had not opposed this motion to strike, and we will by separate order grant this motion, without prejudice to renewal of any relevance arguments relating to these exhibits as this matter proceeds to trial. These stricken exhibits have played no part in our consideration of the instant summary judgment motion.

The undisputed facts can be stated in broad brush.  In January of 2011, Jeffrey Thomas was a state inmate, housed at the State Correctional Institution, Rockview, where he was assigned to an outside prison work detail supervised by the defendant, Mark Shutika.  In January, 2011, Thomas and another inmate, Bradford May, were assigned to do perform work at a residence located on the prison grounds, including landscaping, and using a jackhammer to demolish some outdoor concrete.  Sometime after defendant Shutika delivered the two inmates to this work site, Thomas suffered a crushing foot injury when the jackhammer he was operating jumped, striking his foot and causing multiple fractures of the foot.

Beyond the stark outline of these undisputed facts, much of what transpired during this incident is disputed and contested.  There are three participants and witnesses to these events–the defendant, Mark Shutika; the plaintiff, Jeffrey Thomas; and an inmate, Bradford May.  Each of these witness-participants provides a different factual narrative regarding what occurred at this worksite.

For his part, defendant Shutika insists that when he delivered Thomas and May to their worksite on the morning of the accident he instructed May to operate the jackhammer. (Doc. 38-4.)  Thus, Shutika denies assigning Thomas to perform this work, and completely disputes Thomas' account that he was threatened with discipline by Shutika if he did not undertake this work.

In stark contrast, the plaintiff, Jeffrey Thomas, insists that when they arrived at the worksite, Shutika assigned him to operate the jackhammer, a piece of heavy equipment which he had never operated before. (Doc. 38-3.) Thomas insists that he protested this work assignment, which he regarded as dangerous due to his lack of training, but was threatened with disciplinary action if he refused this order. (Id.) Under the compulsion of threatened discipline, Thomas states that he attempted to operate this equipment, and promptly suffered a severe foot injury. (Id.)

The third participant in these events, inmate Bradford May, provides yet another narrative thread to this episode, a narrative which at various points corroborates and contradicts the accounts of both Thomas and Shutika. (Doc. 38-2.) Thus, May states that when he and Thomas arrived at the job site Shutika assigned Thomas to operate the jackhammer, contradicting Shutika's account of these job assignments. (Id.) May, however, is unable to confirm Thomas' assertion that Thomas protested this assignment, and was forced to undertake this work upon threat of discipline, stating that he simply does not know what transpired between the plaintiff and defendant. Further, May–who had operated the jackhammer in the past–undermines to some degree Thomas' assertions regarding the danger of this equipment and the need for training prior to operating the jackhammer, describing the

operation of this particular piece of heavy equipment as largely a matter of common sense.[2]

It is against this factual background, a background marked by sharply defined factual disputes, that this summary judgment motion comes before us for consideration. Given the factual conflicts in this case, conflicts which relate directly to matters that lie at the heart of this lawsuit, for the reason set forth below the motion will be denied.

## II.   Discussion

### A.   Summary Judgment, Standard of Review

The defendants have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P., Rule 56 (a). Through summary adjudication a court is empowered to dispose of those claims that do not present a "genuine issue as to any material fact," Fed. R. Civ. P. 56, and for which a trial would be "an empty and unnecessary formality."

---

[2]On this particular score the factual picture in this case is further clouded by the testimony of Ron Schinkle, a prison supervisor, who testified that a jackhammer is a piece of prison equipment that requires training before an inmate may operate the equipment. (Doc. 38-5, p. 33.) Thus, Schinkle refutes inmate May's view that the jackhammer could be safely operated without training.

Univac Dental Co. v. Dentsply Int'l, Inc., No. 07-0493, 2010 U.S. Dist. LEXIS 31615, at *4 (M.D. Pa. Mar. 31, 2010).  The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party.  Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact.  Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004).  Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate.  Celotex, 477 U.S. at 322.  Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence.

Anderson, 477 U.S. at 249.   There must be more than a scintilla of evidence

supporting the nonmoving party and more than some metaphysical doubt as to the

material facts.  Id. at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,

475 U.S. 574, 586 (1986).  In making this determination, the court must "consider all

evidence in the light most favorable to the party opposing the motion."  A.W. v.

Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

### B.   Disputed Factual Issues Preclude Summary Judgment on Thomas' Eighth Amendment Claims

In this case, the gravamen of Thomas' complaint is that defendant Shutika

violated his rights under the Eighth Amendment to the United States Constitution by

displaying "deliberate indifference" to his safety by ordering him to operate a piece

of dangerous heavy equipment which Shutika knew Thomas was not competent to

operate, without any training and upon the threat of discipline if Thomas did not

agree to undertake this work assignment.   Thomas faces an exacting burden in

advancing this Eighth Amendment claim against prison officials in their individual

capacities.  To sustain such a claim, he must:

> [M]eet two requirements:   (1) "the deprivation alleged must be,
> objectively, sufficiently serious;" and (2) the "prison official must have
> a sufficiently culpable state of mind."  Farmer v. Brennan, 511 U.S. 825,
> 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quotation marks and
> citations omitted).  In prison conditions cases, "that state of mind is one
> of 'deliberate indifference' to inmate health or safety."  Id.  "Deliberate
> indifference" is a subjective standard under Farmer-the prison official-

> defendant must actually have known or been aware of the excessive risk
> to inmate safety.

Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001).  In Beers-Capitol v.

Whetzel, the Third Circuit has explained the basic requirements of a claim brought

against a prison official under the Eighth Amendment as follows:

> An Eighth Amendment claim against a prison official must meet two
> requirements:   (1) "the deprivation alleged must be, objectively,
> sufficiently serious;" and (2) the "prison official must have a sufficiently
> culpable state of mind."

Id. at 125 (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)).  Furthermore, in

cases involving prison safety or prison conditions, the relevant state of mind "is one

of 'deliberate indifference' to inmate health or safety."  Id.  This deliberate

indifference standard "is a subjective standard under Farmer – the prison official-

defendant must actually have known or been aware of the excessive risk to inmate

safety."  Id.

As explained in Beers-Capitol, in cases based on allegations of deliberate

indifference on the part of prison officials, the Supreme Court has "rejected an

objective test for deliberate indifference; instead it looked to what the prison official

actually knew rather than what a reasonable official in his position would have

known."  Id. at 131.  Specifically, the Supreme Court "held that 'a prison official

cannot be found liable under the Eighth Amendment for denying an inmate humane

conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety.'" Id. (quoting Farmer, 511 U.S. at 837). This requirement of actual knowledge on the part of supervisory officials "means that 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Id. (quoting Farmer, 511 U.S. at 837).

At the same time, this subjective standard does not insulate officials from liability where such officials choose to remain deliberately indifferent to an excessive or substantial or serious risk of harm to inmates. The Supreme Court explained:

> We are no more persuaded by petitioner's argument that, without an objective test for deliberate indifference, prison officials will be free to ignore obvious dangers to inmates. Under the test we adopt today, an Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm would actually befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm.

Farmer, 511 U.S. at 842. The Supreme Court also noted that a supervisory defendant's knowledge of a risk may be proved through circumstantial evidence, so that "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Id. Although the Third Circuit has recognized that a mere generalized knowledge that prisons are dangerous places does not give rise to an Eighth Amendment claim, see, e.g, Jones v. Beard, 145 F. App'x

9

743 (3d Cir. 2005), the Third Circuit did interpret <u>Farmer</u> to signal that "a plaintiff could make out a deliberate indifference case by showing that prison officials simply were aware of a general risk to inmates in the plaintiff's situation[.]" <u>Beers-Capitol v. Whetzel</u>, 256 F.3d 120, 131 (3d Cir. 2001).  However, in order to show deliberate indifference in this fashion, a plaintiff would need to come forward with evidence to showing a substantial basis for demonstrating that a prison official was deliberately indifferent in the face of information or indicators that presented a substantial risk to inmate safety.  <u>See</u> <u>Farmer</u>, 511 U.S. at 842-43 ("If an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it, then such evidence would permit a trier of fact to find that the defendant-official had actual knowledge of the risk.").

Even where a plaintiff has presented sufficient evidence to allow a factfinder to reach the inference that a prison official had knowledge of the risk on the basis that risk was obvious, it is clear that an inference may not be compelled, and that the prison official must be permitted to show that he was actually unaware of the risk in question.  <u>Beers-Capitol</u>, 256 F.3d at 132.  Lastly, a prison official who is shown to

have been actually aware of a risk to a prisoner-plaintiff can avoid liability if he shows that he responded reasonably to the risk, even if the response did not avoid the ultimate harm.  Id.

These general guiding constitutional principles have been applied by the courts to cases involving inmate allegations that correctional staff exposed prisoners to dangerous and unsafe physical conditions inside a prison.  See e.g., Innis v. Wilson, 334 F.App'x 454 (3d Cir. 2009)(Eighth Amendment claim resulting from injuries from prison table collapse); Vidaurri v. Buss, No. 09-580, 2010 WL 625016 (N.D. Ind. Feb. 11, 2010)(Eighth Amendment claim resulting from injuries from prison ceiling collapse); Bennett v. Philadelphia, No. 07-2794, 2008 WL 4211701 (E.D. Pa. Sept. 9, 2008)(Eighth Amendment claim resulting from injuries from prison ceiling collapse); McKnight v. McDuffie, No. 405-183, 2007 WL 1097280 (S.D. Ga. April 9, 2007)(Eighth Amendment claim resulting from injuries from prison bunk collapse); Barrand v. Donahue, No. 06-694, 2006 WL 2982051, *2 (N.D.Ind.Oct. 16, 2006)(Eighth Amendment claim resulting from injuries from prison ceiling collapse). These cases all set exacting standards  for establishing Eighth Amendment violations premised upon a failure to protect an inmate from a dangerous physical condition inside a prison, providing that in this setting:

> Deliberate indifference is comparable to criminal recklessness, and is
> shown by "something approaching a total unconcern for [the plaintiff's]

11

welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm." A defendant "must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference." A defendant must have "actual knowledge of impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." This total disregard for a prisoner's safety is the "functional equivalent of wanting harm to come to the prisoner." Negligence does not satisfy the "deliberate indifference" standard, and it is not enough to show that a prison guard merely failed to act reasonably. Deliberate indifference can be inferred only where defendants know there is a strong likelihood rather than a mere possibility that violence will occur. Prison officials cannot be expected to eliminate the possibility of all dangers. Thus, the right to reasonable protection does not include the right to protection from random acts.

Barrand v. Donahue, No. 06-694, 2006 WL 2982051, *2 (N.D.Ind.Oct. 16, 2006)(citations omitted).

These same principles govern Eighth Amendment claims by inmates based upon allegations that correctional staff ordered prisoners to undertake dangerous work assignments. In this setting, the concept of voluntary employment in prison—where correctional staff control virtually all aspects of the workplace and may use disciplinary processes to enforce compliance with workplace rules—does not, by itself, prevent an inmate's claim for injuries arising out of dangerously unsafe workplace conditions. See e.g., Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006); Bagola v. Kindt, 131 F.3d 632, 645, n. 18 (7th Cir. 1997). In this highly regulated prison employment context, courts recognize that "voluntariness ends at the

point where cruel and unusual punishments begin." <u>Bagola v. Kindt</u>, 131 F.3d 632, 645, n. 18 (7th Cir. 1997). <u>See also</u> <u>Smith v. United States</u>, 561 F.3d 1090 (10th Cir. 2009). Furthermore, these cases all recognize that "the Eighth Amendment is implicated in the prison work context . . . when a prisoner employee alleges that a prison official [1] compelled him to "perform physical labor which [was] beyond [his] strength, [2] endanger[ed his life] or health, or [3] cause[d] undue pain." <u>Berry v. Bunnell</u>, 39 F.3d 1056, 1057 (9th Cir.1994) (per curiam)." <u>Morgan v. Morgensen</u>, 465 F.3d 1041, 1045 (9th Cir. 2006). See also <u>Harris v. Kim</u>, 483 F. App'x 329, 331 (9th Cir. 2012). Moreover, in a setting where prison disciplinary rules enable corrections staff to sanction inmates who refuse to perform specific tasks, these cases all acknowledge that the issue of voluntariness assumes a factual dimension which may not be resolved on summary judgment. <u>Id</u>.

Applying these legal yardsticks, in this case we find as a factual matter that it is disputed whether Thomas voluntarily chose to operate this heavy equipment without training, or whether he was forced to do so under protest in the face of a threat of prison discipline. Further, disputed facts prevent us from reaching any conclusions regarding whether defendant Shutika knew that Thomas regarded the jackhammer as a piece of equipment which presented an immediate and direct threat to his health and safety, but instructed Thomas to work under unsafe conditions.

Furthermore, as a legal matter, it is apparent that questions concerning the voluntariness of an inmate's decision to work under conditions prescribed by prison officials do not prevent an inmate's claim for injuries arising out of dangerously unsafe workplace conditions.  See e.g., Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006); Bagola v. Kindt, 131 F.3d 632, 645, n. 18 (7th Cir. 1997).  Given the presence of these disputed facts, the defendants have not shown that there is no genuine issue as to any material fact and that the movants are entitled to judgment as a matter of law.  Accordingly, the defendants' motion for summary judgment on Thomas' Eighth Amendment claim must be denied.

## C.    Thomas' State Tort Claims Fall Within a Statutory Exception to Sovereign Immunity

Finally, the defendants seek summary judgment on Thomas' state law negligence claims, arguing that the doctrine of sovereign immunity precludes these state tort claims against prison officials.  In this regard the contrasting positions of the parties can be simply stated:  The defendants' sovereign immunity argument stems from the familiar proposition that the Commonwealth and its employees and officials enjoy broad immunity from most state law claims, immunity that is expressly embraced by statute, which provides that: "it is hereby declared to be the intent of the General Assembly that the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and

14

official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity." 1 Pa. C. S. A. § 2310; see also Moore v. Commonwealth, 538 A.2d 111, 115 (Pa. Commw. 1988) ("In other words, if the Commonwealth is entitled to sovereign immunity under Act 152, then its officials and employees acting within the scope of their duties are likewise immune"). This grant of immunity "applies to Commonwealth employees in both their official and individual capacities, so long as the employees are 'acting within the scope of their duties.'" Larsen v. State Employees' Ret. Sys., 553 F. Supp. 2d 403, 420 (M.D. Pa. 2008) Conduct of an employee is within the scope of employment if " 'it is of a kind and nature that the employee is employed to perform; [and] it occurs substantially within the authorized time and space limits . . . .' " Brautigam v. Fraley, No. 09-1723, 2010 WL 480856, *4 (M.D. Pa. Feb. 4, 2010) (Rambo, J.) In this case, defendants contend that defendant Shutika was a Commonwealth employee, who was acting within the scope of his employment in committing the acts alleged in this complaint. The defendants further insist that none of the narrowly crafted statutory exceptions to sovereign immunity apply here. Therefore, the defendants assert that they enjoy sovereign immunity on Thomas' state law negligence claim and are entitled to summary judgment on this claim.

In response, Thomas attempts to avoid the bar of sovereign immunity by arguing that the alleged negligence in this case falls within one of the recognized statutory exceptions to this immunity.   Specifically, Thomas asserts that the Commonwealth parties remain liable for any harm caused by "care, custody, or control of personal property."  42 Pa. C.S.A. 8522(b)(3), contends that this statutory exemption applies here, and argues that this exemption defeats the defendants' sovereign immunity claim.

Section 8522, of Title 42, Pennsylvania Consolidated Statutes provides a limited waiver of sovereign immunity in certain specific instances, stating that:

> **(a) Liability imposed.--**The General Assembly, . . . , does hereby waive, in the instances set forth in subsection (b) . . . , sovereign immunity as a bar to an action against Commonwealth parties, for damages arising out of a negligent act where the damages would be recoverable under the common law or a statute creating a cause of action if the injury were caused by a person not having available the defense of sovereign immunity.

> **(b) Acts which may impose liability.--**The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised to claims for damages caused by:

> * * * * * * * * * * * * * * * * * * * *

> **(3) Care, custody or control of personal property.--**The care, custody or control of personal property in the possession or control of Commonwealth parties, including Commonwealth-owned personal property and property of persons held by a Commonwealth agency,

except that the sovereign immunity of the Commonwealth is retained as a bar to actions on claims arising out of Commonwealth agency activities involving the use of nuclear and other radioactive equipment, devices and materials.

42 Pa.C.S.A. § 8522 (a) and (b)(3).

"Because of the clear intent to insulate government from exposure to tort liability, the exceptions to immunity are to be strictly construed." Lockwood v. City of Pittsburgh, 751 A.2d 1136, 1139 (Pa.2000) (citation omitted).  With this guiding principle in mind, we turn to the application of  42 Pa.C.S.A. § 8522 (a) and (b)(3) to torts that occur in a prison setting.  The Pennsylvania courts have examined the application of §8522(b)(3)'s "personal property" exception to sovereign immunity in the context of prison tort claims on several occasions in different factual settings.  As construed by the Pennsylvania courts, this narrow exception to sovereign immunity applies to damages claims made by inmates for negligent damage to items of inmate personal property while that property is in the possession of Commonwealth parties. Williams v. Stickman, 917 A.2d 915 (Pa. Cmwlth 2007).  Such claims are permitted against the Commonwealth pursuant to §8522(b)(3).  In contrast, courts have rejected efforts by inmates to broadly claim that this exception to sovereign immunity applies to all prisoner personal injury claims, based upon the notion that the inmates themselves are in some fashion "in the possession and custody of Commonwealth parties." Gallagher v. Commonwealth, 545 A.2d 981 (Pa. Cmwlth 1988).

17

In instances where prisoners bring personal injury claims against Commonwealth parties, and seek to avoid the bar of sovereign immunity, in order to plead "a cause of action that falls within the personal property exception to immunity, for the exception to apply, the personal property *itself* must cause [the] injuries, not merely facilitate it. Warnecki v. Southeastern Pennsylvania Transportation Authority, 689 A.2d 1023 (Pa.Cmwlth.1997)." Pennsylvania State Police v. Klimek, 839 A.2d 1173, 1175 (Pa.Cmwlth.,2003)(emphasis in original). Applying this standard, courts have held that the personal property exemption does not apply to tort claims based upon inmate attempts to harm themselves using personal property furnished by the state since, in this setting, the personal property merely facilitated the harm, it did not cause that harm. See e.g., Pennsylvania State Police v. Klimek, 839 A.2d 1173, 1175 (Pa.Cmwlth.,2003); Vargo v. Plum Borough, No. 06-1574, 2007 WL 1459403 (W.D.Pa. May 15, 2007). However, where a plaintiff alleges and shows that the Commonwealth party's negligence with respect to some personal property "directly caused" an injury, §8522(b)(3)'s "personal property" exception to sovereign immunity applies and the plaintiff may maintain an action against these state actors. Pennsylvania State Police v. Klimek, supra; Gambo v. Commonwealth, No. 04-3318, 2005 WL 4346598 (Pa.Com.Pl. Aug. 26, 2005).

While the distinction between personal property that causes an injury and personal property that merely facilitates an injury is often easier to announce than to apply, in this case we conclude that Thomas has sufficiently pleaded a negligence claim caused by the Commonwealth's personal property to withstand summary judgment. Fairly construed, Thomas' complaint alleges that this personal property–a prison jackhammer–was the direct, immediate and proximate cause of his injuries. In short, this is not an instance in which the Commonwealth's property was simply an article that incidentally facilitated some harm.  Rather, the Commonwealth's property was the immediate agent of that harm.  In such instances, where "the personal property *itself* must cause [the] injuries, not merely facilitate it," Pennsylvania State Police v. Klimek, supra, we find that §8522(b)(3)'s "personal property" exception to sovereign immunity applies, and Thomas may maintain this claim.

### III.    Conclusion

For the foregoing reasons, the defendants' motion for summary judgment (Doc. 36.) will be denied.  An appropriate order will issue.

So ordered this 4th day of June, 2014.

*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge